I please the Court, Luke Clayton from Paul Weiss, for the appellant. I'm very happy to be here in nice and warm St. Louis today. We submit that the judgments here should be reversed or vacated and the underlying actions transferred for the fundamental reason that Appley's claims here are an inseparable part of a mandatory class that was certified in the Southern District of New York. Counsel, would you agree we can't address those issues if subject matter jurisdiction is in doubt? Yes, Your Honor, and I think that You can't do anything that's briefed until the badger problem is solved? Yes, Your Honor. Here's our view on that. As Your Honor notes, we believe that actually the vast majority of the appeals here are situations where subject matter jurisdiction is lacking. That is because in many of the cases, the pleadings themselves show that diversity is lacking. There are other cases, a number of them, where there is some factual development that has to happen to determine exactly what the citizenship is. And Judge Logan, if I may slightly amend what I just said concerning what this Court can do, we do think that because there are certain acts that have to happen based on the lack of subject matter jurisdiction and some factual matters to be determined, for example, situations where it's not so clear exactly what citizenship is, we believe this Court does have power to transfer these cases to a court, a class court. As opposed to remand? As opposed to remand, yes. Just because Justice Alito explained that diversity is almost never self-evident. Yes. So how are we going to resolve it on this record? All the potential diversity questions that may lurk here. I'm not saying theoretically it could. It makes no sense for the Court to do that. I think a district court should do that. But we think that the remand should go to the Court that has certified the mandatory class action, and that is the Southern District of New York. Would we have jurisdiction to transfer? Transfer, excuse me. Would we have jurisdiction to do that if we don't? Yes. I believe this Court does. And that's determining whether we have jurisdiction over the case? Yes, exactly. I think the Court has jurisdiction to determine what case would support that. Your Honor, I don't know of a case that is directly on point here because of this unusual situation, but I do think that a court has power to determine whether it has subject matter jurisdiction. And here, because we do have factual questions, they have to be determined somewhere. If we're not deciding it, we're transferring it to the District Court. But the District Court has the power to do that. But the District Court could do that, maybe. Yes. But, Your Honor, I think the only difference between    those two propositions is whether the remand should go back to Western District, Missouri, or whether it should go, whether there should be a reversal and a transfer to New York, because that's where the class action is for the purpose of that Court supervising the process of determining subject matter jurisdiction. Well, of course, your priority argument is that aspect of the briefing. Yes, yes. And that's a huge assumption of subject matter jurisdiction. Well, I think obviously our view that the remand and the transfer should go to the Southern District of New York definitely is based on our view that Rule 23, there's a mandatory certified class. Rule 23 places the power and the responsibility to supervise the class action in the class court. That's the Southern District of New York. These claims here are part of the class action. The class action predates, as a matter of just the first filed rule also, the class action predates all of the arbitrations. All of the arbitrations themselves actually... Can I interrupt just on that point before you slip away? Yes, Your Honor. When you say it predates, are you talking about the confirmations or the arbitrations themselves in which your client participated? Let me pass it out for a second. When I'm talking about first filed, I think of it in two pieces. The first is that the Ferguson action, which is now the certified class action, was filed prior to any arbitration being instituted. That's the first part of the first file from my perspective. That's Ferguson first in the Southern District of New York. That's the existing, now certified class action. Second comes the initiation of the arbitration demands. There's a second prong to the first filed, which is that the class in Ferguson was certified prior to any of the confirmation actions in the Western District of Missouri being filed. And it is, of course, those confirmation actions that bring us here in this proceeding. And in our view, that's significant for two reasons. First, just the first filed rule when it comes to comparing Ferguson to the initiation of the arbitrations. Second, the certification order of the mandatory class, we believe, is very significant because under Rule 23 and as recognized by this Court in Federal Skywalk and in other cases that are similar, the certification order not only places the responsibility and the obligation to supervise the class action in the Court that is hearing the mandatory class action, but also under Federal Skywalk, the certification order actually has injunctive effect. So we think for each of those reasons, and they're independent, the first filed rule and the secondary, which of course supersedes, preempts under the Rules Enabling Act other statutes. We think that is the clear path and the reasons. It preempts Section 9 of the Federal Arbitration Act? I believe under the Rules Enabling Act it does. What cases ever address that? I would say it comes from the statute itself, which says. Well, they're both statutes. We have a rule of court trumping the statute according to another statute. That's a pretty strained argument. Your Honor, I don't think so because the text of the Rules Enabling Act says so. The text of the Rules Enabling Act, I believe, says explicitly that once the rules are adopted, that they preempt laws that are inconsistent. The Rules Enabling Act says, 28 U.S.C. Section 2072B. Subsection A says the Supreme Court has the power to prescribe general rules of practice, of course. Section B says such rules shall not abridge, enlarge or modify any substantive right. But then it says all laws in conflict with such rules shall be of no further force or effect after such rules have taken effect. And, of course, the Arbitration Act actually precedes the Rules Enabling. These are both acts that have been with us for a significant period of time. And the Arbitration Act is from 1925, I believe. The Rules Enabling Act is the 30s. But what the Rules Enabling Act does, I think, quite clearly, is says when the federal court system decides on a rule and the Supreme Court approves it, it wipes out. And that is, I believe, a common sense rule because it says that when the Supreme Court adopts a rule of procedure, that's going to govern it. And I would also say it has particular application here when you look at the very recent Morgan decision of the Supreme Court. You know, we've had, since even the briefs were filed here, we've had the Supreme Court help us out, I guess, by issuing a couple of FAA cases. And what the unanimous decision in Morgan said was ordinary procedural rules of the federal courts will apply in FAA cases. In that case, the issue was a rule applied by this court and others concerning waiver. But we think it's very plain that Rule 23 governs here. And the other piece of Morgan that I think is significant here is, for the unanimous court, Justice Kagan says it is not the case that there is a federal policy that favors arbitration. The briefs here of the appellees argue that there is a federal policy favoring arbitration. And the unanimous court in Morgan says, I believe, very clearly, that is not the policy. The policy implemented by the FAA is that arbitration contracts are contracts and will be given the respect due to a contract under the federal court system. But there is no policy favoring arbitration. In this case, the district court had an alternative ruling on the judicial estoppel. And sort of putting aside the Badreau issue for now, you've chosen not to address that in your briefing. Can you sort of succinctly present your position on why you think that that's not, why you don't want that to be in play here? Yes, Your Honor. And the reason is this. Estoppel is a complicated question here because of the way the interplay between these arbitration actions and the 9,000 person class action being supervised by Judge Carter in New York. Indeed, estoppel and waiver were discussed, were briefed before Judge Carter. Because we had, as the record shows, we had a lot of proceedings in this case before Judge Carter concerning the injunction that he issued, concerning his refusal to stay the injunction. Our view is this. We are not asking here for this court to limit any of the substantive rights that appellees have, including the issues of waiver and estoppel. What we're saying is you just used the Rules Enabling Act to limit what they're arguing in a way that's clearly inconsistent with your client's conduct early in the game. I would say, Your Honor, if I gave that impression, that was my fault. But if I can put a very fine point on it, we're just saying the Rules Enabling Act says that these issues, including waiver and estoppel, should be decided in New York. The point is, should judicial estoppel bar that argument, given your client's embracing of the Federal Arbitration Act before? I don't think it can because Rule 23, we're not affecting a substantive right. What we're saying is the issue of waiver and estoppel has to be decided by the class court here for several reasons. One is Rule 23, which says there's no conflict between Rule 23 here and the FAA, in our view, because Rule 23 says these issues have to be decided by the class court. The FAA does not say where particular issues should be decided. And there are those claims affect the 9,000-member class action. There's only one recovery here. This is an ERISA claim, as this Court recognized in Braden. These claims are claims on behalf of the plan. And what Judge Carter did, and there was extensive briefing before Judge Carter on exactly these issues, because Judge Carter requested it in New York. Judge Carter said, I want the parties to brief the question of waiver and estoppel. We briefed it, and Judge Carter read the briefs and held, and the order is in the record, that at the time of resolution of the class action, either in settlement or after trial, he would resolve those issues. The class itself, which is not in this Court, not represented, has a real interest in those issues, because if these judgments are confirmed, that places the arbitration claimants, who are members of the mandatory class, in a position different from the other class members. And Judge Carter found that that could be, it risks prejudice to the interests of the absent class members. What we're saying is, because this is a class claim, because this is a plan claim, everyone should get a second. It seems to me that would only be if the district courts view that FAA Section 9, if her broad interpretation of what Section 9 demands, immediate confirmation, if that had collateral, if that was binding on Judge Carter. If not, so what? Yes, but I think, Your Honor, that has to be determined under Rule 23 by the class court, and there are 9,000. In New York, when we had this briefing, there was a lawyer representing the 9,000 member certified class. Those people aren't here. Judge Carter said, the confirmation actions were initiated in frustration of the class action. He found that when he issued the injunction. He also reiterated it when he denied the motion to stay the injunction. And as this Court knows, the Second Circuit a few days ago denied the motion of the Appellees in this case for a stay of that injunction as well. Also denied their 23F petition. But there are lots of other parties involved here. The arbitration, the effect of the arbitration awards, because it's a class action, because it's a unitary action on behalf of the plan, and because there are 9,000 other people who have interests here, should be determined as a matter of Rule 23, due process, and also the interests of ERISA by the Court who is supervising everything. There could be an impact on the awards given to the other. Yes, I'm sorry. I'll tell you, I'll throw out my initial reaction to this and let you react. Yes. That is, if the District Court was right, our District Court, in rejecting the Second Circuit's view in Cooper with regard to the arbitrability of these ERISA claims, if we agreed with that, then all of this is not binding. Only if we agree with the Second Circuit in Cooper, which more or less validates in the Eighth Circuit, Judge Carter's purported nationwide assumption of this jurisdiction. Only then, it seems to me, does your judicial estoppel position and your transference positions have weight in this circuit? Well, Your Honor, here, I appreciate that. Our reactions to this, first of all, that's a hotly debated issue right now. There are cases like Cooper. There's another District Court case called Sedanio that we've cited, which is on appeal right now. It's not just right now. We've been dealing with the fiduciary duty liability with respect to individual actions for more than a decade. Yes, Your Honor, but we believe there is no case that holds that an ERISA case of this kind is arbitrable. The closest that the appellees have come is to cite the Dorman case in the Ninth Circuit, which is a the opposite. There are District Courts that say the opposite. Okay, but if we disagree with Cooper, then we take a position on this. Yes, Your Honor, but I think... And your notion of first filed and absent class member damage and so forth, it seems to me, goes by the boards. I would respectfully disagree, Your Honor, because the question is, that question, because this is part of a mandatory class action, that question should be determined by a court where all the participants in the class action and, of course, the participants in a... This is a unitary claim on behalf of the plan. Everyone should be represented, and that should be done in a manner which is fair to everyone. And I believe respect should be accorded to any Federal District Court that certifies a mandatory class, particularly where the court says other actions are in frustration of that class action. We believe in those circumstances, there was never authority. It was never proper, because the class had been certified, under this Court's decisions in Federal Skywalk and just as the case would be when there are issues between any Federal courts. And we've cited cases, the Rich case, the Second Circuit case, is an example of a certified class action where a District Court transferred. We have three situations we've cited where courts have transferred, and we have seen no authority. It would be unprecedented, I respectfully submit, for this Court to say that a individual who is a party to a mandatory class action can institute in another court an action at that time. We have seen no authority to that effect, and we've cited repeatedly cases in our briefs that indicate that. I see the red light is on for me, although I reserve seven minutes, but I wanted to make sure to answer the Court's questions. If the Court has further... Mr. Schermerhorn? Thank you, Your Honor, and may it please the Court. The District Court we submit was correct when it entered judgment on the case. Before we get going, I want to ask you, were all these confirmation petitions filed before the Ferguson Court entered its injunction? Yes. All of them. All 177 petitions were filed before Judge Carter entered an injunction. In this case, DST doesn't even allege that Judge Lowry erred when she confirmed the awards. Instead, what DST argues is that as a procedural matter, Judge Lowry should have relinquished jurisdiction over the arbitrations. Counsel, you've got to start with Badgerow with me. I mean, you know, if we don't have any jurisdiction, why are we listening? Judge, you referred to Badgerow as creating a Badgerow problem. We certainly don't see it that way. What the Supreme Court decided in Badgerow... You don't see it that way? Well, let me explain it this way. Good grief. What the Supreme Court... Who read it for you? Here's how I interpret Badgerow. What the Supreme Court declared was that confirmation actions are, in fact, breach of contract claims. Traditionally, or ordinarily, breach of contract claims arise under state law. Now, that is not always the case. And here we submit it is absolutely not the case. If these are to be viewed as breach of contract cases, this is a breach of contract case involving ERISA, involving ERISA plan damages, involving awards ultimately payable directly to an ERISA plan account. This Court, the Supreme Court, Congress have all recognized that ERISA is a special species of statute. It's like Section 301 of the labor... So is this a grable argument? This isn't even a grable argument. I mean, we'll make that argument as well. But this is simply an argument that this case, if it is a breach of contract case, it doesn't arise under Missouri state law. It arises under federal common law. This case presents a federal common law claim for breach of contract if we are to view it as Badgerow declared. But to your point, Badgerow didn't eliminate grable jurisdiction. And here the district court clearly felt that she had jurisdiction under grable. She declared the question here as an important one that would be applicable to hundreds of cases. What's the principle behind grable? It seems to me it has the capacity to swallow up any case in the state court that presents any kind of question of federal law. I think the limiting principle are the four factors that this court has applied before, which is it's going to be an issue of purely law. Okay. So here the court was deciding... That happens all the time in the state court. The second factor is one that has impact hundreds of future cases. What are the operative words? Significant case? Highly important case? I mean, what are we... What collection of words are we supposed to use here to try to test these facts for grable jurisdiction? Yeah, I think certainly... It's not a rhetorical question. I can't figure it out. I don't think there is a whole lot of guidance. And we agree that grable describes the cases that fit within this group of cases as special. But I think the chief concern in grable, when it was describing the kinds of cases that might fit within that special category, was that it be a case that doesn't interfere with the dichotomy created between... Let me just stop you. All you've said is what I thought I was going to ask you, what's the basis of federal question jurisdiction? And you're outlining it. But it's not clear on this record. That just tells me that we have to remand all 177 and not just the ones where diversity might be messy or unclear. I don't believe that's true. I think it is clear on this record that we certainly raise... We don't have an operative principle to apply. We don't have a district court judge telling us what the operative principle ought to be. This is not the way appellate courts function. I'll say two things about that. First, Section 28 U.S. Code 1653 states that defective allegations of jurisdiction may be amended even in the courts of appeals. And so if the court felt like the petition here didn't properly allege subject matter jurisdiction, we seek leave to amend the petition to do so. I also think, Judge... No, wait. You want to amend the pleading in the circuit court or did I hear you wrong? In the district court. To the extent the court feels like our petitions fail to amend, we should remand more than where... First of all, I don't think the diversity is going to be clear on its faces to any... I agree with Justice Alito in Vedro that it's almost always messy. And it seemed to me we couldn't just stop with the cases that might be messy with respect to diversity because of this complexity. You argued you may be able to shoehorn these cases all into a federal question basis that survives Vedro, but not on this record. We think we can. We think that this court can look at... What do I look at? The court need only look at the petition. This is a motion to confirm under the Federal Arbitration Act. It asks the court to resolve a dispute, a substantial dispute between the parties involving ERISA. That necessarily raises a federal question. The case arises under federal law. The Supreme Court has been running away from ERISA preempting everything for at least two decades. We've got to decide that on this record? I think that there's clear Supreme Court precedent that to the extent these claims involve money payable to a plan, claims that would traditionally be brought under the remedial provisions of ERISA, that there's clear federal jurisdiction, exclusive jurisdiction in federal courts. Now, here's what I would suggest. Even if we agree with Cooper? I'm sorry? Even if we agree with the Second Circuit and Cooper? I'll get to that. I think that raises a different question. No, this is all what you're asking us to do with brand new Supreme Court law that completely trumps the district court's analysis. Judge, in this case, with respect to Badgerow, DST raises this jurisdictional defect in their reply brief. We, as appellees, have never had an opportunity to brief that issue. You briefed in your red brief. Well, DST did not allege a jurisdictional defect. You want another brief? Judge, I only think it's fair. How long should we give you for that, to file that? Sixty days? Ninety days? Absolutely not, Judge. At most, I'd ask for five days. We don't think this is a complicated issue, but DST did raise the Badgerow question in its reply brief. Badgerow itself had only come out after DST filed its original brief. Right, but it came out in time for your red brief, and you commented on it, and they responded, as reply briefs do. That being said, we do... Go get the federal rules amended again. Otherwise, the Rules Enabling Act bars you. So let me turn to Cooper and what this Court has already decided. My colleague from DST says that this is an issue being hotly debated among the circuit courts. In our view, it's not one that is being hotly debated in this circuit. Now, sure, in Braden, the Court declared ERISA claims as the kind of claim brought on a representative capacity, but Judge Loken, you wrote an opinion in Pilgrim v. Sweeney. It was after LaRue, after the Supreme Court decided LaRue, in which you observed that there's two kinds of plans. There's the traditional defined contribution plan to which Brady applies. Braden, I'm sorry. But you also observed that after LaRue, plan participants in a defined contribution plan can bring individual claims for relief. And so in our view, it's not a disputed question. Now, he cited to two district cases from the Ninth Circuit. The latter of those cases held the same thing. I still don't understand how that escapes Badgerill. I mean, you're using a federal statute to ERISA to establish federal question jurisdiction in the teeth of Badgerill. I guess, Judge, I read... Which said just look at the confirmation claim. I read Badgerill, I guess, a little different. The way I read it is the Court said you can't look through, traditionally, you can't look through the confirmation petition to what is ordinary a state breach of contract claim. No, you can't look through it all. Right. What I'm saying is you can't look through to the underlying claim in order to get around what is... But you're asking us to do that. I don't think so. I think what I'm suggesting is that rather than look through to the underlying claim, Judge Lowry confirmed awards. Those awards, those confirmed awards are payable to a pension plan. The money won't be paid to our clients in this event. If this Court affirms Judge Lowry's decision below, the money will be paid directly to an ERISA account. And so this, if we had filed these confirmations in state court and said this is a state contract dispute, DST would have removed the case and argued it was completely preempted. Because this, even the confirmed awards, not the underlying dispute, not whether DST violated ERISA, that is settled. What Judge Lowry had to decide was a dispute between the parties as to whether she should confirm these awards, a dispute that involved ERISA plan damages, a dispute that touches directly upon an ERISA plan itself. And so she was deciding not whether DST violated ERISA. She was deciding that this contract dispute, what Badgerow describes as a contract dispute, only here the contract dispute does not arise under Missouri State law. Missouri State law would not govern in this case the contract dispute, whether the award should be confirmed. Instead, ERISA governs. And to the extent that we can remedy confirmation, for example, the Supreme Court has established that federal common law applies. And so in our view, Badgerow certainly says that Judge Lowry couldn't look through and say, well, this is a case involving whether DST violated ERISA, and so I have subject matter jurisdiction. She can no longer do that under Badgerow. But we don't believe that's what she did. And we certainly don't believe that even if she did subject matter jurisdiction in this case for the reasons I articulated. The last thing I'll say on this point, we filed a motion for affirmative relief in the district court. We filed a motion to confirm. DST responded by filing its own motion for affirmative relief. They asked the district court to vacate the awards. So even if the court didn't have subject matter jurisdiction over our petition, because you can't find on the face of the petition that subject matter jurisdiction exists, there's no question that DST presented a federal question. They told the court that the awards should be vacated. Well, yeah, but Badgerow didn't exist for either party. What I'm suggesting is that DST raises a federal question in their motion to vacate. They're not asking the court to look through either. What they're saying to the district court below is that these claims must be vacated because federal law prohibits. At the time these briefs were filed in the district court, the Federal Arbitration Act provided a federal question jurisdiction. I think that's debatable, too, Judge. I think, in fact, you've written a decision. It was debatable, yeah. So the Supreme Court granted cert. You said you're all wrong. What I mean to say is I don't think district court judges have always relied on the look-through approach, even in this circuit. I don't think this court has always relied on the look-through approach. There were decisions by this court that held that subject matter jurisdiction existed for reasons other than Section 9 of the Federal Arbitration Act. So it's true that Badgerow made it easy. As long as you had a federal claim, you sought confirmation. I think nobody thought about it. And that's true in this case. The parties didn't think about it. But Badgerow didn't eliminate federal question jurisdiction. It just made us think about it different. And so if we were to start over, I don't think there would be any question. We'd all be saying that the district court had subject matter jurisdiction because these present federal questions on their face. And maybe I'm not understanding your argument, but I understand your position in the briefing to be that a confirmation award is not even really a civil action. It's, you know, absent one of the exceptions, the district court must confirm the award. Is that... Yeah, that's right. I mean... Then how does that dovetail in with your argument about, well, it's a federal question. I'm just looking at Badgerow, and it's just, if it alleges federal law beyond Section 9 or 10 itself, entitles the applicant to relief. So I'm not sure how... Help me understand how those two positions go along. On the one hand, this is almost rubber stamp in the district court versus, oh no, this is a federal question independent of Section 9 or 10. I think where the court has to look is where does the right to relief arise? So the right to relief presents, in this case, a contract dispute, and it arises under federal law necessarily because ERISA preempts essentially all law, including state breach of contract law. Now, that does not mean that the court, having obtained jurisdiction because these breach of contract cases arise under federal law, must necessarily resolve a bunch of federal questions. I mean, if the issue is that you resolve this case by looking strictly at the exceptions under Section 10 of the Federal Arbitration Act, then that's what she would do. In this particular case, though, what actually happened was that DST alleged that one of those four exceptions, that the arbitrators exceeded their authority, violated federal law. The federal law required that she find that the arbitrators exceeded their authority by resolving claims that weren't arbitrable under ERISA. And ultimately, that is what Judge O'Connor did. She said, are these claims under ERISA on an individual basis, or are they not? And she resolved that by, of course, relying on federal law. And then we get to Cooper in the Second Circuit. Exactly. But in responding to the transfer argument, as I read your brief, Section 1404 provides a district court may transfer any civil action. An application for an order confirming an arbitration is not a civil action. Well, it's not a civil action as defined in those statutes, in the transfer statute. That's certainly one of the positions. Now, that is not our primary position. Because it bumps into your attempt to get around Badgero. We're not attempting to get around Badgero. We certainly think that Badgero changed how courts look at this issue. But we don't think that we need to find some avenue around it. We think Badgero directly applies and provides this court with subject matter jurisdiction. I think the point is, and Judge Loken, you kind of alluded to this earlier, DST went into the Western District of Missouri well before the Ferguson plaintiffs ever filed a case. And they argued that a class action could not be maintained and that Mr. Ducharme, who is one of the appellees here, that he has to arbitrate on an individual basis. They argued that federal law required it and the district court below agreed and ordered these cases be arbitrated on an individual basis. And then for years, the parties arbitrated these cases on an individual basis. Mr. Clayton said that the Ferguson case was filed before the initiation of the first arbitration. Well, it was filed after Ducharme. And after those three plaintiffs in New York filed a case, it wasn't filed as a class action. DST sent a notice to all plaintiff participants advising them of the decision in Ducharme and alerting them that they too may file individual arbitrations. So it was never DST's position that these cases had to be arbitrated on a class-wide basis until it became advantageous for them to take that position. Oh, surprise. They were surprised. There is judicial estoppel, but it's got to apply. Well, judicial estoppel certainly applies here. Well, not if their position was legally wrong at the outset. Well, it was not. But that's a lie. Even if their position was legally wrong. The circuit has never decided that in these cases. Judge, even if DST's position was legally wrong, the doctrine of judicial estoppel would still apply. You can't induce a party into taking an action based on a position you've gotten a federal judge to agree with and then later say I was... Is there case support for that? Well, I think the doctrine, I don't have case support for that right now, but I think the doctrine of judicial estoppel just simply doesn't entertain that you can take a position, be proven wrong, and then say King's X. And certainly DST's never provided any support for that position. But here... It's a very narrow doctrine. I haven't dealt with it for a while. It is, but it's one that, I mean, if it applied in any case, it would be this. I mean, these people were told to arbitrate. They've spent years doing it. They've won. I mean, I think about it like this. This is real money, so I hate to compare or analogize this case to a game. But here the game is over. These people were ordered to participate in individual arbitration, and they won. These are like settled claims. And it's axiomatic that a class action cannot include... All the Supreme Court was dealing with is where do they have to go to get confirmation? Well, if that's the question, the Federal Arbitration Act says in Missouri. It's the only place you can go. I think Missouri, last I knew they had state courts in Missouri. Judge, I see my time is up. So unless the court has anything further... That's what the Supreme Court was getting at. I think that's true, that where confirmation arises strictly under state law, where it is a true breach of contract, state law applies, then this case... State courts apply federal common law all the time. Well, I think that's true, but this is ERISA. I think ERISA is unique. And this brings me back. I do feel like we were cheated a little bit out of briefing this issue because we did not anticipate... We certainly had read Badgerill. You're right, we cited to it. We did not anticipate the kinds of arguments DST would make in their reply brief. I think it's not as complicated as they make it out to be. I certainly don't think Badgerill means that there doesn't exist federal jurisdiction in this case. And all that being said, Judge, there are clients of ours who are diverse. Diversity jurisdiction does exist. So the court can't simply send all the cases back because there's no question that as to some of our clients, the district court had jurisdiction. So we do 177 mini-trials to figure out who those people are? That's not in our job description. All right. Enough. Thank you. I'll give you two minutes for rebuttal, Mr. Clayton. Very, very quickly, Your Honor. On the question of Grable jurisdiction, Grable does set out a test and there's one very important piece of the test. And one very important piece is the Supreme Court emphasizes that when Congress has ruled or decided on what the Supreme Court calls the division of labor between federal and state courts, that should be honored. And that division of labor can change in different contexts. And if you look at Bajoral and Grable, what you see is that the Supreme Court is saying when you look at both cases, the division of labor that Congress decided was actions to compel arbitration can go to federal and state court. There you go look through. But actions to confirm or vacate are different. And that is exactly the division of labor that Grable talks about. Those two cases fit Grable like bookends. That's why you cannot do look through in this case. Secondly, Your Honor, judicial estoppel, we see the question here of who must decide these questions that concern the class action, administration of the class action, frustration arguably of the class action. Remember, Rule 23 talks about risk. Rule 23 says if the district court finds a risk, not a certainty, of differing outcomes or prejudice to the class, that risk justifies mandatory class certification. Rule 23 says that's where these issues should be decided. So we therefore don't see estoppel here because the question is who should decide these questions of waiver and estoppel. Finally, in my last 20 seconds, I would say there is no case that we have found in the Eighth Circuit that clearly decides this question of arbitrability. Indeed, the district court below in its opinion said this is an important issue. We quoted that in our briefs. The district court says this is an important issue. It can affect lots of people and some higher court is going to have to determine it. I respectfully submit, based on this record, the Eighth Circuit may have to determine that question. I respectfully submit this is not the forum for that to be determined. And crucially, because these issues Judge Carter found frustrate the class action and because they could prejudice the other class members, there's only one recovery here. Will the money that goes to the arbitration claimants be deducted from what all the other class members get? We believe that is the case. And there's only one judicial officer here who can decide that in a fair way with everyone listening. And that is the court in New York, subject of course to the appeal in an appeal in the Second Circuit. Very much appreciate the court's time, unless the court has any further questions. Thank you very much. Thank you, counsel. Very complicated case. It's been very well briefed and argued. Arguments helped. Certainly reinforced the complexity and seriousness and we will take it under advisement.